UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| STATE OF VERMONT,<br>      Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION,<br>EXXONMOBIL OIL CORPORATION,<br>ROYAL DUTCH SHELL PLC, SHELL OIL<br>COMPANY, SHELL OIL PRODUCTS<br>COMPANY LLC, MOTIVA ENTERPRISES<br>LLC, SUNOCO LP, SUNOCO, LLC, ETC<br>SUNOCO HOLDINGS LLC, ENERGY<br>TRANSFER (R&M), LLC, ENERGY<br>TRANSFER LP, and CITGO PETROLEUM<br>CORPORATION,<br>      Defendants. | Case No. 2:21-cv-260 |

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

Eric L. Lewis*
Mark J. Leimkuhler*
1050 K Street, NW, Suite 400
Washington, DC 20001
(202) 833-8900
Eric.Lewis@lbkmlaw.com
Mark.Leimkuhler@lbkmlaw.com
* *Pro hac vice*

Justin E. Kolber
Laura B. Murphy
Merideth C. Chaudoir
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Justin.Kolber@vermont.gov
Laura.Murphy@vermont.gov
Merideth.Chaudoir@vermont.gov

January 5, 2024

# **TABLE OF CONTENTS**

                                                                   **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................2

I.     *Connecticut* Mandates Rejection of Defendants' Argument that Federal Common Law Governs the State of Vermont's Claims. ...........................................................2

        A.     The State's VCPA Claims Are Not Removable Under *Grable* ..............................2

        B.     Complete Preemption Is a Red Herring In This Case ..............................................6

                1.     Defendants Have Conceded They Do Not Rely Upon Complete Preemption. ................................................................................................7

                2.     Federal Common Law Does Not Provide A Basis For Complete Preemption. ................................................................................................8

II.     *Connecticut* Forecloses Removal Under the Federal Officer Statute. ...............................10

III.     *Connecticut* Forecloses Removal Under the OCSLA .........................................................14

IV.     There Is No Federal Enclave or Diversity Jurisdiction Here .............................................14

CONCLUSION ........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bd. of Cnty. Comm'r of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
   25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023)............................9, 11, 14

*Christie v. Dalmig, Inc.*,
   136 Vt. 597 (1979)...............................................................................................................4

*City & Cnty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023)...................................13, 14

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3rd Cir. 2022) ......................................................................................9, 11, 13, 14

*City of New York v. Chevron Corp.*,
   993 F.3d 81 (2d Cir. 2021).................................................................................................1, 3, 5, 8

*Cnty of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ...................................................................................................11-14

*Connecticut v. Exxon Mobil Corp.*,
   No. 3:20-cv-01555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021)..................................14

*D.C. v. Exxon Mobil Corp.*,
   640 F. Supp. 3d 95 (D.D.C. 2022) ..............................................................................................15

*District of Columbia v. Exxon Mobil Corporation*,
   __ F.4th __, 2023 WL 8721812 (D.C. Cir. Dec. 19, 2023) ........................................... 8, 11-15

*Drake v. Allergan, Inc.*,
   63 F. Supp. 3d 382 (D. Vt. 2014)..................................................................................................4

*Foti Fuels, Inc. v. Kurrle Corp.*,
   195 Vt. 524 (2013) .......................................................................................................................4

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008)..................................................................................................10, 13

*Marcus v. AT&T*,
    138 F.3d 46 (2d Cir. 1998)..........................................................................................................9

*Massachusetts v. Exxon Mobil Corp.*,
   462 F. Supp. 3d 31 (D. Mass. 2020) ............................................................................................6

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2020) ......................................................................... 9, 11, 14

*Metropolitan Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) ................................................................................................. 10

*Minnesota v. Am. Petroleum Inst.*,
   63 F.4th 703 (8th Cir. 2023) ................................................................. 9-11, 13, 14

*Poulin v. Ford Motor Co.*,
   147 Vt. 120 (1986) ................................................................................................... 3

*Rhode Island v. Shell Oil Prod. Co.*,
   35 F.4th 44 (1st Cir. 2022) ............................................................................ 9, 11, 14

*State of Connecticut v. Exxon Mobil Corp.*,
   83 F.4th 122 (2d Cir. 2023) ........................................................................... *passim*

*Ulbrich v. Groth*,
   310 Conn. 375 (2013) .............................................................................................. 4

**Statutes**

9 V.S.A. § 2453(b) ........................................................................................................ 4

Conn. Gen. Stat. Ann. § 42-110b ................................................................................. 4

Federal Trade Commission Act § 5(a)(1) .................................................................... 4

**PRELIMINARY STATEMENT**

The State of Vermont hereby responds to the Court's December 5, 2023 Order inviting additional briefing on the impact of the Second Circuit's decision in *State of Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023) ("*Connecticut*") on this case. As discussed below, *Connecticut* forecloses removal on grounds of federal common law, *Grable*, federal officer removal, and the Outer Continental Lands Shelf Act ("OCLSA"). It does not address federal enclave and diversity jurisdiction grounds for removal, which grounds Exxon abandoned on appeal in that proceeding.

On *Grable* and complete preemption, about which this Court has expressed particular interest, *Connecticut* specifically rejects the notion that there is any "federal common law" exception to the well-pleaded complaint rule. It also explains that the *Grable* exception applies only when a question of federal law is a "necessary element" of a well-pleaded state claim. Because the necessary elements of Vermont's VCPA claims are not based on any question of federal law, but instead are substantially similar to those of the CUTPA claims in *Connecticut*, the *Grable* removal argument fails here, just as it did there and for the same reasons.

Whether federal common law can ever give rise to complete preemption remains "purely hypothetical" since—as in *Connecticut*—Defendants have conceded they are not asserting complete preemption here. In addition, because the "federal common law of transboundary pollution" has been displaced by the Clean Air Act, it is not even possible for such federal common law to completely preempt state claims. Regardless, whether under a *Grable* or complete preemption analysis, Vermont's claims manifestly do not seek relief that could trigger the federal law of transboundary pollution applied in *City of New York* in the first place.

As for the other asserted removal grounds, the Second Circuit—like seven other circuit courts—rejected "federal officer" and OCSLA removal. Defendants' arguments here are the same as those rejected in *Connecticut*. Defendants' "federal enclave" and diversity jurisdiction arguments have been rejected by courts across the nation, and nothing warrants a different outcome here. Accordingly, this action should be remanded to the Chittenden Superior Court.

## **ARGUMENT**

**I.      *Connecticut* Mandates Rejection of Defendants' Argument that Federal Common Law Governs the State of Vermont's Claims.**

The Second Circuit rejected Exxon's argument for a "federal-common-law exception" to the well-pleaded complaint rule, which, in the court's words, "would appear to hinge on the proposition that the … rule must yield not only in situations of 'complete[ ] preempt[ion] …, but also in certain situations of ordinary preemption." *Connecticut*, 83 F.4th at 135.  In so doing, the Second Circuit reaffirmed that there are only three exceptions to the well-pleaded complaint rule: (i) where Congress expressly provides for removal of state-law claims by statute; (ii) where the state-law claims are completely preempted by federal law; and (iii) in certain cases, where vindication of a state-law right necessarily turns on a question of federal law (*i.e.*, *Grable*). *Id*. at 138 (citation omitted). None apply here.[1]

### A.      The State's VCPA Claims Are Not Removable Under *Grable*

*Grable* applies only where a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 139-40. Defendants allege that the State's Complaint "necessarily raise[s] federal issues" that are actually disputed because, they suggest,

---

[1] As in *Connecticut*, the first exception does not apply to federal common law. Defendants' arguments for removal on the basis of the federal officer removal statute and OCLSA are separately addressed below.

2

"Federal Common Law governs the claims." Notice of Removal (Dkt. 1), ("NOR") ¶ 78. Defendants are wrong.

*First*, the "federal common law of transboundary pollution" could not possibly apply here because, as previously briefed, this action is not "a nuisance suit seeking to recover damages for the harms caused by global greenhouse gas emissions." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021). Nor does the State seek to hold Defendants liable "for effects of emissions made around the globe over the past several hundred years." *Id.* at *92; see* Compl. ¶ 6.[2] Its VCPA claims "have absolutely nothing to do with 'the federal common law of transboundary pollution.'" *Connecticut*, 83 F.4th at 142.

*Second*, even if that were not the case, *Grable* is not implicated because here, as in *Connecticut*, no "necessary element" of the claims is "affirmatively premised on … a violation of" the "federal common law of transboundary pollution." *Id.* The necessary elements of a VCPA deception claim are substantially similar to those under the CUTPA: "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect consumers' conduct or decision with regard to a product." *Poulin v. Ford Motor Co.*, 147 Vt. 120, 124-25 (1986); *see also Connecticut,* 83 F.4th at 140-41 (discussing the elements under the CUPTA).

Vermont's deception claims focus on Defendants' marketing, promotion, and sale of fossil fuel products to Vermont consumers through: (i) "disinformation campaigns" about climate change and its link to fossil fuel consumption; (ii) "advertising" the use of their products

---

[2] *See also* Mem. of Law in Supp. of Plf.'s Mot. to Remand, ECF No. 49 ("Br.") at 12-19; and Reply Mem. Of Law in Supp. of Plf.'s Mot. to Remand, ECF No. 55 ("Reply") at 1-3.

as better for the environment, while "staying silent" about the products' adverse climate impacts; and (iii) "greenwashing" campaigns in which they "falsely hold themselves out as responsible stewards of the environment." Compl. ¶¶ 4-5; *see also id.*, ¶¶ 179-180.

Tracking the elements of a VCPA claim, Vermont further alleges that Defendants' "misrepresentations and omissions" were and are "likely to mislead" Vermont consumers as well as "likely to affect" consumer decisions regarding the purchase or use of Defendants' products (*i.e.*, "material"); and that the meaning ascribed to Defendants' "claims and omissions" is "reasonable." *Id.,* ¶¶ 181-82. As in *Connecticut*, the "necessary elements of [Vermont's] deception claim" can be resolved "without reaching the federal common law of transboundary pollution." 83 F.4th at 142. That the "lies were *about* the impacts of fossil fuels on the Earth's climate is immaterial." *Id.* (emphasis in original).

The same is true for Vermont's unfairness claim. Whether an act is "unfair" under the VCPA is "guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is 'immoral, unethical, oppressive or unscrupulous,' and (3) 'whether it causes substantial injury to consumers.'" *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014), quoting *Christie v. Dalmig, Inc.,* 136 Vt. 597, 601 (1979). The same factors are considered under the CUTPA. *Compare Connecticut,* 83 F.4th at 141, quoting *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013). As with a CUPTA unfairness claim, Vermont need not prove each of the foregoing "subsidiary allegations" to support a finding of unfairness. *Id.*[3]

Vermont alleges that Defendants' conduct: (i) "offend[s] the public policy" reflected in

---

[3] Construction of terms in both the CUTPA and the VCPA is guided by the construction of similar terms in Section 5(a)(1) of the Federal Trade Commission Act. *See* Conn. Gen. Stat. Ann. § 42-110b; 9 V.S.A. § 2453(b); *see also Foti Fuels, Inc. v. Kurrle Corp.,* 195 Vt. 524, 534 (2013).

§ 2453 of the VCPA, and is contrary to other policies and prohibitions against deception that influences economic choice and interferes with a fair and honest marketplace; (ii) is "immoral and unscrupulous" as it deprives consumers of information needed to make decisions regarding the purchase of Defendants' products; and (iii) has caused Vermont consumers "substantial injury" to the extent they would not have purchased the products, or would have bought less or fewer of them, had they been given fair and honest disclosures. Compl. ¶¶ 190-92. If any of the foregoing allegations "could potentially support a showing of unfairness without raising a federal issue, the rest will drop out" of the analysis. *Connecticut*, 83 F.4th at 142. The Second Circuit found that Connecticut's allegations—"most obviously, its allegation that Exxon Mobil's statements and omissions 'were in contravention of Connecticut's public policy' of 'promoting truth in advertising,'"—"have absolutely nothing to do with 'the federal common law of transboundary pollution.'" *Id.* The same is true of every allegation made in support of Vermont's unfairness claim.

Nor can Defendants establish *Grable* jurisdiction "simply by gesturing towards ways in which 'this case' loosely 'implicates'" (*Connecticut*, 83 F.4th at 140) "foreign affairs," NOR ¶¶ 51-71, or "issues of foreign policy." *Id.*, ¶ 80. Defendants argue that Vermont's claims "will interfere with a carefully calibrated network of 'international treaties' that strike a 'balance … between the prevention of global warming …, on the one hand, and … foreign policy, and national security, on the other.'" *Id.*, ¶ 56, (quoting *City of New York*, 993 F.3d at 93). The Second Circuit concluded that such contention "is entirely irrelevant to [its] *Grable* analysis, since it 'may [or may not] give rise to an affirmative federal preemption defense,' but it certainly 'is not grounds for federal jurisdiction.'" 83 F.4th at 140 n. 6, quoting *City of New York*, 993 F.3d at 94.

5

Defendants' alternative contention that the Complaint is removable under *Grable* because it raises "other contested federal issues," NOR ¶¶ 87-94, also fails. *Connecticut* puts to rest Defendants' mistaken premise that an action "necessarily raises" federal issues "where the 'interpretation of federal law [is] required.'"[4] Under the "necessarily element" test, a claim must be "affirmatively 'premised' on a violation of federal law." Vermont's claims do not meet that standard because, as previously discussed, the Complaint does *not* allege a violation of EPA standards, or that Defendants' products do not surpass those standards, or that Defendants have violated any federally prescribed duty. *See* Br. 20-28; Reply 13-15. Nor do the asserted "other contested federal issues" meet the other requirements for removal under *Grable*. *Id*. In sum, *Connecticut* establishes that Defendants' reliance upon *Grable* is unavailing.

**B.    Complete Preemption Is a Red Herring In This Case.**

Because Vermont's claims have "absolutely nothing to do with" the federal common law of transboundary pollution, this case does *not* "squarely present" (Defendants' words) the issue of "'whether federal common law can' *ever* 'give rise to complete preemption' or otherwise 'convert state claims into federal claims in the same manner as complete preemption under federal statutes." *Connecticut*, 83 F.4th at 138 n. 4 (emphasis in original). *See also Massachusetts v. Exxon Mobil Corp.,* 462 F. Supp. 3d 31 (D. Mass. 2020) (even if federal common law may completely preempt state causes of action, court would still lack jurisdiction because Massachusetts' claims did not implicate federal common law). Moreover, as discussed below, Defendants *have* conceded, as Exxon did in *Connecticut*, that their invocation of federal common law is not an argument for complete preemption. In all events, the answer to the "purely

---

[4] Defs.' Mem. of Law in Opp. to Plf.'s Mot. to Remand, ECF No. 51 ("Opp.") at 24.

hypothetical" question is "no."[5]

### 1. Defendants Have Conceded They Do Not Rely Upon Complete Preemption.

Defendants' Notice of Removal, filed by Exxon, makes no mention of complete preemption.[6] Defendants subsequently confirmed they were not asserting complete preemption, stating in their opposition that: "The Attorney General's focus on preemption, see Br. 15–20, is thus misplaced because Defendants are not asserting a preemption defense as the basis for federal jurisdiction." Opp. 11. In light of *Connecticut*, Defendants now try to backtrack on that concession. Pointing to the distinction between "complete (jurisdictional) preemption and ordinary (defensive) preemption," they now say they had earlier "made clear that their argument 'does not implicate ordinary preemption principles' and does 'not assert[] a preemption defense as the basis for federal jurisdiction.'" Notice Regarding the Second Circuit's Decision in *State of Connecticut v. Exxon Mobil Corporation* (Dkt. 76) at 2 n. 3. This about-face is not persuasive.

The "Attorney General's focus on preemption," in response to which Defendants made their concession, unmistakably concerned *complete preemption*. The State had argued that "under the 'well pleaded complaint' rule, federal common law would not provide a basis for removal absent complete preemption of state law, which … does not exist here." Br. 11. The State further argued that Defendants "have not alleged any recognized basis for invoking the artful pleading doctrine," including "complete preemption." *Id.* at 19-20. Defendants' disclaimer in response to these jurisdictional arguments could only have concerned *complete* preemption.

---

[5] In *Connecticut,* the Court characterized the question of whether federal common law could ever give rise to complete preemption as "purely hypothetical" because defendants had conceded they were not so arguing. 83 F.4th at 138 n.4.

[6] The Notice instead asserts only that federal common law "provides the rule of decision" and "govern[s]" the State's VCPA claims (NOR ¶ 74), which is manifestly incorrect and, in any case, not an assertion of complete preemption.

7

Moreover, Exxon's parallel concession in *Connecticut* was that its "invocation of federal common law is not an argument for ordinary preemption, *a fortiori* it is not an argument for complete preemption." Brief of Defendant in Opposition to Plaintiff's Motion to Remand, *Connecticut v. ExxonMobil Corp.*, No. 3:20-cv-01555, at 17 n.21 (D. Conn. Jan. 18, 2021) (Dkt. 37) (Excerpted at Exhibit A hereto). The same logic applies to this case: if federal common law was not an argument for complete preemption in *Connecticut*, it is not a basis for complete preemption here.

### 2. Federal Common Law Does Not Provide A Basis For Complete Preemption.

Even if Defendants had not conceded the complete preemption issue, federal common law could not completely preempt Vermont's consumer protection claims because, as noted above, Vermont's claims do not seek any relief that could trigger the federal law of transboundary pollution applied in *City of New York.* Further, two weeks ago, the D.C. Circuit addressed the federal common law/complete preemption issue and ruled that federal common law could not completely preempt D.C.'s claims. *District of Columbia v. Exxon Mobil Corporation*, __ F.4th __, 2023 WL 8721812 (D.C. Cir. Dec. 19, 2023) ("*District of Columbia II*").

*District of Columbia II* involved claims under D.C.'s Consumer Protection Procedures Act ("CPPA"). Defendants did not argue that Congress completely preempted the CPPA suit, but instead "suggest[ed] the federal common law of interstate pollution might be 'analogous in some respects to complete preemption.'" *Id.* at *3. Admitting "their reliance on federal common law is not an orthodox application of the doctrine of complete preemption," they argued that the "artful pleading doctrine should allow for removal" when a "state law action is necessarily governed by federal common law." *Id.*

8

The D.C. Circuit rejected that approach: "[E]ven assuming federal common law could provide a basis for removal under the artful pleading doctrine, the Companies' argument fails as there is no longer any relevant federal common law that might displace the District's CPPA claim," because such law has been displaced by the Clean Air Act. *Id*. at *3-4. The court rejected the argument that "state-law suits about interstate emissions are barred as a jurisdictional matter" whether or not "there is a remedy under federal common law," finding the argument "foreclosed by the doctrinal underpinnings of federal common law and by numerous Supreme Court decisions." *Id*. at 4. "Legislative displacement of federal common law applies for both jurisdiction and merits purposes." *Id*. Other circuits have reached the same conclusion.[7] In other words, it is not possible for the "federal common law of transboundary pollution" to completely preempt anything—that law has itself been displaced.

There is no reason to believe the Second Circuit would reach a different result. To the contrary, in *Marcus v. AT&T*, it recognized that the Supreme Court had "sharply circumscribed" the availability of removal based on complete preemption to "the very narrow range of cases

---

[7] *See, e.g.*, *Minnesota v. Am. Petroleum Inst.,* 63 F.4th 703, 710-11 (8th Cir. 2023) ("*Minnesota II"*) ("Because Congress has not acted to displace the state-law claims, and federal common law does not supply a substitute cause of action, the state-law claims are not completely preempted."). *Mayor & City Council of Baltimore v. BP P.L.C.,* 31 F.4th 178, 206 (4th Cir. 2020) ("*Baltimore III*") (removal on the basis of federal common law that has been displaced "defies logic"); *Rhode Island v. Shell Oil Prod. Co.,* 35 F.4th 44, 55-56 (1st Cir. 2022) ("*Rhode Island III")* ("Congress displaced the federal common law of interstate pollution, and it would 'def[y] logic' to base removal on a 'federal common law claim [that] has been deemed displaced ….'"); *City of Hoboken  v. Chevron Corp.,* 45 F.4th 699,  707-08 (3rd Cir. 2022) ("*City of Hoboken II)* (rejecting "a new form of complete preemption, one that relies not on statutes but federal common law"); *Bd. of Cnty. Comm'r of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1262 (10th Cir. 2022) ("*Boulder III"), cert. denied*, 143 S. Ct. 1795 (2023) ("Because federal common law is created by the judiciary – not Congress – Congress has not 'clearly manifested an intent' that the federal common law for transboundary pollution will completely preempt state law. … And because federal common law does not *completely* preempt state law, removal is not warranted under the artful pleading or complete preemption exception to the well-pleaded complaint rule.").

where 'Congress has clearly manifested an intent' to make specific action within a particular area removable." 138 F.3d 46, 54 (2d Cir. 1998) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987). Accordingly, federal common law does not completely preempt state-law claims "absent some express statement or other clear manifestation from Congress that it intends the complete preemption doctrine to apply." *Id*. No such statement or manifestation appears here and Defendants cannot point to anything remotely suggesting such intent.

And in *Connecticut*, the court reaffirmed that "'a federal cause of action' must 'completely preempt[ ] a state cause of action' in order to trigger the potent legal fiction that "any [state-law] complaint that comes within the scope of th[at] federal cause of action necessarily 'arises under' federal law." 83 F.4th at 137. There is "no substitute federal cause of action for the state-law causes of action [Vermont] brings." *Minnesota II,* 63 F.4th at 710.

## II. *Connecticut* Forecloses Removal Under the Federal Officer Statute.

The Second Circuit rejected Exxon's argument that it was entitled to invoke federal officer removal jurisdiction based on its current and historical business dealings with the federal government, including (1) leases with the federal government in connection with its fossil fuel production and supply, including Outer Continental Shelf ("OCS") and Strategic Petroleum Reserve ("SPG") operations; (2) providing fossil fuels to support the national defense; and (3) contracts to supply "fossil-fuel products to the military under exacting specifications established by the federal government." *Connecticut*, 83 F.4th at 142-45. Defendants' federal officer removal arguments in this case are virtually identical and should likewise be rejected.

*Connecticut* confirmed the three-pronged *Isaacson* test that Defendants must satisfy to effect federal officer removal. *Id.* at 142-43 (citing *Isaacson v. Dow Chem. Co*., 517 F.3d 129, 135 (2d Cir. 2008)). A defendant must "(1) show that it is a 'person' within the meaning of the statute who 'acted under a federal officer,' (2) show that it 'performed the actions for which [it

10

is] being sued under color of federal office', and (3) raise a colorable federal defense." *Id*. (citations omitted). "The first two of these prongs tend to collapse into a single requirement: *that the acts that form the basis for the state civil ... suit* were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Id.* at 143 (citations omitted) (emphasis in original); *see also* Br. 29; Reply 17-18. Exxon did not satisfy this test in *Connecticut* and the court squarely rejected the argument that the Removal Clarification Act abrogated the casual-nexus requirement. *Id*. at 145 n.7. Defendants' argument here has the same fatal flaw: "a total mismatch between the business practices that [Defendants] assert[] were subject to federal control and supervision" and the deceptive marketing of which Vermont complains. *Id*. at 145.[8]

    ***Federal Government Leases.*** In *Connecticut*, Exxon argued that removal was proper because it "leases oil drilling sites from the federal government on the outer continental shelf, and that pursuant to these leases, it has been subject to myriad federal government requirements and, pursuant to its role as an operator and lessee of the Strategic Petroleum Reserve Infrastructure, it has been required to pay royalties in kind to the federal government." 83 F.4th at 143; *see* NOR ¶¶ 134-158; Br. 30-33; Opp. 32; Reply 20-21. The Second Circuit rejected this argument, noting that "five of [its] sister circuits" had also "squarely rejected it." *Connecticut* at 143 (citing *Rhode Island II*, at 53 n.6, *City of Hoboken II* at 712-13, *Baltimore III* at 231-34, *San Mateo II* at 759-60; and *Boulder III* at 1250-54); *see also Minnesota II* at 714-16; *District of Columbia II* at *7-8.

    Defendants' argument here is virtually identical and should also be rejected. They fail

---

[8] *See also Rhode Island II* at 53, n.6; *City of Hoboken II* at 712-13; *Baltimore III* at 231-34; *Boulder III* at 1250-54; *Minnesota II* at 714-15; *District of Columbia II* at *7-8; *Cnty of San Mateo v. Chevron Corp.*, 32 F.4th 733, 759-60 (9th Cir. 2022) ("*San Mateo II*").

11

to satisfy *Issacson*'s first prong because their OCS- and SPG-related activities "at most … represent arms-length commercial transactions" or compliance with the law and thus "cannot be – acting under a federal officer…." *Connecticut* at 143; *see also San Mateo II* at 757, 759-60 (defendants are not acting under a federal officer when they enter into an arm's-length business arrangement with the government "or suppl[y] it with widely available commercial products or services … [or] compl[y] with the law (or *acquiescence* to an order) … even if the regulation is highly detailed and … [the] activities are highly supervised ..."); Br. 30-33; Reply 20-21. Defendants' argument also fails because there is no causal link between their OCS or SPG activities and the State's VCPA claims. *Connecticut* at 145; Br. 30-33; Reply 20-21.

      ***Providing Fuel for the National Defense.*** *Connecticut* also rejected Exxon's argument that it acted under a federal officer when it "contributed significantly to the United States military by providing fossil fuels that support the national defense," because these activities were not performed "under the close supervision, subjection, guidance or control of federal officers" when Exxon was engaged in the conduct sued upon—*i.e.,* its deceptive marketing practices. 83 F.4th at 144-45. The Second Circuit found that Exxon's "national defense" activities were irrelevant and too far removed in time. *Id.* The D.C. Circuit also rejected this argument. *District of Columbia II*, at *7.

      Defendants' argument here is no different. They invoke long-ago dealings with the government before and during World War II and the Korean War and compliance with directives of the Petroleum Administration for Defense during those wars and the 1973 oil embargo. These past activities are not the conduct Vermont has sued upon—deceptive marketing to Vermont consumers—and cannot be the basis for removal. *See Connecticut* at 144-45; *District of Columbia II* at *7 ("There is simply no relationship between" the alleged misrepresentations and

12

the fossil fuel defendants' activities "during World War II and the Korean War and [act of] complying with orders of the Petroleum Administration for Defense during those periods and the 1973 oil embargo."); Compl. ¶¶ 67-162; Br. 30-33; Reply 19.[9]

***Highly Specialized Fuel Supplied to the Military.*** Finally, *Connecticut* found no merit in Exxon's argument that "to this day, [it] supplies fossil-fuel products to the military under exacting specifications established by the federal government." 83 F.4th at 144-45. Such acts were not done under the close supervision, subjection, guidance, or control of federal officers, and even if they were, Exxon failed *Isaacson*'s second prong because there was no "causal nexus between [its] claimed role as a military supplier and the alleged campaign of deception that forms the basis of Connecticut's CUTPA claims." *Id.* Other circuit courts have drawn similar conclusions.[10]

Here, as in *Connecticut,* Defendants' "bald and passing assertion" that, "to this day" they supply "non-commercial" and "highly specialized" fuel to the military fails to satisfy the first prong of *Isaacson*. 83 F.4th at 144-45. Moreover, Defendants admit that their "non-commercial" and "highly specialized" fuel is different from the fuel that Vermont consumers purchased, and there is no claim that Defendants engaged in their deception at the behest of or in coordination with federal officers. *See* NOR ¶¶ 103, 114-16. Thus, there is no causal nexus to

---

[9] Moreover, Defendants "did not act under federal officers when they produced oil and gas during the Korean War and in the 1970's under the defense Production Act (DPA). DPA directives are basically regulations." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107-08 (9th Cir. 2022) ("*Honolulu II"), cert. denied*, 143 S. Ct. 1795 (2023); *San Mateo II* at 757, 759-60. Those acts do not satisfy the first prong of *Isaacson. See Connecticut* at 143-45.
[10] *See*, *e.g., District of Columbia II* at *7 (rejecting federal officer removal, as no alleged misrepresentations reference defendants' relationship to the federal government that "persist to this date … Nor is there any allegation that [defendants] engaged in these misrepresentations at the behest of or in coordination with federal officers.") *Minnesota II* at 715; *City of Hoboken II* at 713.

Vermont's CPA claims, and their argument fails on this independent ground.

### III. *Connecticut* Forecloses Removal Under the OCSLA.

Defendants argue that removal under the OCSLA is proper because "a substantial part of" Vermont's VCPA claims "'arises out of, or in connection with' Defendants 'operation[s] conducted on the outer Continental Shelf' that involve 'the exploration and production of minerals.'" NOR ¶ 181; *see also id.* ¶ *182*. *Connecticut* rejected this argument, like every other court of appeals to address the issue. 83 F.4th at 145-47 ("This argument brings us back to ground well-trodden by our sister circuits ... all of which have rejected it.") (citing *Rhode Island II* at 59-60; *City of Hoboken II*, at 709-12; *Baltimore III* at 219-22; *San Mateo II* at 751-55; *Boulder III* at 1272-75); *see also Minnesota II* at 712-13*; District of Columbia II* at \*8.

As in *Connecticut,* Vermont's consumer protection claims are "too many steps removed" from Defendants' "operations on the Shelf." *See* 83 F.4th at 146-47; *see also* Br. 34-38. And since Vermont's claims are based solely on the VCPA, it can, like Connecticut, "accurately cast [its] suit [] as just about misrepresentations," and its claims "ultimately concern neither 'extracting oil and gas' nor burning them, but *talking about what happens to the environment when they are burned.*" *Connecticut* at 147 (internal citations omitted) (emphasis in original). Thus, Vermont's action likewise "cannot trigger federal jurisdiction under the OCSLA." *Id.*

### IV. There Is No Federal Enclave or Diversity Jurisdiction Here.

Although Exxon removed Connecticut's action based on federal enclave and diversity jurisdiction, it abandoned those arguments on appeal after losing them in the district court. They have no more merit than the arguments that were pursued. *See Id.* at 129; *Connecticut v. Exxon Mobil Corp.*, No. 3:20-cv-01555, 2021 WL 2389739 at \*13-14 (D. Conn. June 2, 2021). Courts of appeals and district courts across the nation have rejected them. *See San Mateo II* at 748-51; *Rhode Island III* at 58-59; *Baltimore III* at 217-19; *Boulder III* at 1271-72; *Honolulu II* at 1111;

14

Br. 38-44; Reply 23-29 (and cases cited therein).[11] Defendants' arguments here are equally unavailing; they present nothing new that would warrant a different outcome.

## CONCLUSION

For the foregoing reasons, the Court should remand this action to the Superior Court of the State of Vermont, Civil Division Chittenden Unit, where it was originally brought.

DATED:  January 5, 2024                Respectfully submitted,

                                      STATE OF VERMONT

                                      CHARITY R. CLARK
                                      ATTORNEY GENERAL

By: _____
    Justin E. Kolber
    Laura B. Murphy
    Merideth C. Chaudoir
    Assistant Attorneys General
    Office of the Attorney General
    109 State Street
    Montpelier, VT 05609
    (802) 828-3186
    Justin.Kolber@vermont.gov
    Laura.Murphy@vermont.gov
    Merideth.Chaudoir@vermont.gov

---

[11] The D.C. Circuit did not address federal enclave or diversity jurisdiction because, after losing those arguments in the district court, defendants there also abandoned them on appeal. *See District of Columbia II* at *2; *D.C. v. Exxon Mobil Corp.,* 640 F. Supp. 3d 95, 106-07, 110-11 (D.D.C. 2022).

                LEWIS BAACH KAUFMANN
                MIDDLEMISS PLLC

                Eric L. Lewis*
                Mark J. Leimkuhler*
                1050 K Street, NW, Suite 400
                Washington, DC 20001
                (202) 833-8900
                Eric.Lewis@lbkmlaw.com
                Mark.Leimkuhler@lbkmlaw.com
                *Pro hac vice