# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

STATE OF VERMONT,

                 Plaintiff,

       v.

EXXON MOBIL CORPORATION,
EXXONMOBIL OIL CORPORATION, ROYAL
DUTCH SHELL PLC, SHELL OIL COMPANY,
SHELL OIL PRODUCTS COMPANY LLC,
MOTIVA ENTERPRISES LLC, SUNOCO LP,
SUNOCO LLC, ETC SUNOCO HOLDINGS LLC,
ENERGY TRANSFER (R&M) LLC, ENERGY
TRANSFER LP, and CITGO PETROLEUM
CORPORATION,

             Defendants.

Case No. 2:21-cv-260-wks

Date: January 5, 2024

ORAL ARGUMENT REQUESTED

## DEFENDANTS' SUPPLEMENTAL BRIEF
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT .................................................................................................................. 1

I.      This Court Has Jurisdiction Under The *Grable* Doctrine. .................................... 1

II.     Federal Common Law Completely Preempts The Attorney General's Claims. ................. 7

III.    This Action Satisfies The Requirements Of The Federal Officer Removal Statute. ........ 13

CONCLUSION .............................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agyin* v. *Razmzan*,
    986 F.3d 168 (2d Cir. 2021).............................................................................13, 14

*Alford* v. *FedEx Ground Package System, Inc.*,
    2006 WL 8436220 (D. Vt. Feb. 1, 2006) ............................................................5, 7

*Am. Elec. Power Co.* v. *Connecticut*,
    564 U.S. 410 (2011).................................................................................9, 11, 12

*Banco Nacional de Cuba* v. *Sabbatino*,
    376 U.S. 398 (1964)..........................................................................................10

*Carter* v. *Gugliuzzi*,
    716 A.2d 17 (Vt. 1998) .......................................................................................2

*Caterpillar Inc.* v. *Williams*,
    482 U.S. 386 (1987)..........................................................................................12

*Christie* v. *Dalmig, Inc.*,
    396 A.2d 1385 (Vt. 1979) ...................................................................................2

*City of Milwaukee* v. *Illinois*,
    451 U.S. 304 (1981)........................................................................................9, 11

*City of New York* v. *Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021).................................................................7, 9, 12, 13

*Cnty. Bd. of Arlington Cnty.* v. *Express Scripts Pharmacy, Inc.*,
    996 F.3d 243 (4th Cir. 2021) .............................................................................14

*Connecticut* v. *Exxon Mobil Corporation*,
    83 F.4th 122 (2d Cir. 2023) ...................................................................... *passim*

*Drake* v. *Allergan, Inc.*,
    63 F. Supp. 3d 382 (D. Vt. 2014).....................................................................2, 3

*District of Columbia* v. *Exxon Mobil Corporation*,
    2023 WL 8721812 (D.C. Cir. Dec. 19, 2023)..................................................3, 12

*Franchise Tax Bd. of Cal.* v. *Hyatt*,
    139 S. Ct. 1485 (2019)........................................................................................9

*Gunn* v. *Minton*,
568 U.S. 251 (2013) ................................................................................2

*Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*,
545 U.S. 308 (2005) ...........................................................................1, 3, 6, 7

*Illinois* v. *City of Milwaukee*,
406 U.S. 91 (1972) ................................................................................9

*Int'l Paper Co.* v. *Ouellette*,
479 U.S. 481 (1987) ..............................................................................9

*Latiolais* v. *Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc) ...............................................13

*Marcus* v. *AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998) ..........................................................7, 8, 10, 11

*Metropolitan Life Insurance Co.* v. *Taylor*,
481 U.S. 58 (1987) ...........................................................................8, 10

*Nat'l Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*,
471 U.S. 845 (1985) ..............................................................................8

*Nat'l Pork Producers Council* v. *Ross*,
598 U.S. 356 (2023) ..............................................................................9

*Nordlicht* v. *New York Telephone Co.*,
799 F.2d 859 (2d Cir. 1986) ...................................................................8

*Oneida Indian Nation* v. *County of Oneida*,
411 U.S. 661 (1974) .............................................................................12

*Pac. Coast Fed'n of Fishermen's Ass'ns, Inc.* v. *Chevron Corp.*,
2023 WL 7299195 (N.D. Cal. Nov. 1, 2023) .........................................6

*Republic of Philippines* v. *Marcos*,
806 F.2d 344 (2d Cir. 1986) ...................................................................8

*Texas Indus., Inc.* v. *Radcliff Materials, Inc.*,
451 U.S. 630 (1981) .......................................................................7, 10, 11

*Travelers Indemnity Co.* v. *Sarkisian*,
794 F.2d 754 (2d Cir. 1986) ...................................................................8

*Weaver, In re*
2015 WL 4722615 (Bankr. D. Vt. Aug. 7, 2015) ...................................3

**Statutes**

28 U.S.C. § 1442(a)(1)..........................................................................................13, 14

Clean Air Act, 42 U.S.C. § 7401 *et seq.* .............................................................6, 12, 13

47 U.S.C. § 151 *et seq.*.................................................................................................11

Removal Clarification Act, Pub. L. No. 112-51 (2011)..................................................13

Vt. Stat. Ann. tit. 9, § 2453(a)................................................................................2, 3, 5, 7

**Other Authorities**

2012 Vt. Acts & Resolves No. 109 § 2 ...........................................................................5

Br. for Resp'ts Connecticut, New York, California, Iowa, Rhode Island, Vermont,
    and the City of New York, *Am. Elec. Power Co.* v. *Connecticut*, 564 U.S. 410
    (2011) (No. 10-174), 2011 WL 915093 .................................................................12

Defendants submit this supplemental brief in opposition to Plaintiff's motion to remand and request oral argument under Local Rule 7(a)(6).[1]

## ARGUMENT

The Second Circuit's decision in *Connecticut* v. *Exxon Mobil Corporation*, 83 F.4th 122 (2d Cir. 2023), controls some of Defendants' asserted grounds for removal, but not all. This case squarely presents two questions not decided by *Connecticut*: (1) whether the Vermont Attorney General's complaint necessarily raises a substantial federal question under *Grable* by alleging that Defendants failed to comply with federal standards and policy when marketing fossil fuels; and (2) whether federal common law completely preempts the Attorney General's claims.[2]

## I.    This Court Has Jurisdiction Under The *Grable* Doctrine.

Federal jurisdiction lies because the Attorney General's claims "arise under" federal law pursuant to the *Grable* doctrine. As the Second Circuit explained in *Connecticut*, the *Grable* doctrine is an exception to the well-pleaded complaint rule. *Connecticut*, 53 F.4th at 138. Under this exception, federal jurisdiction is proper, even if a complaint does not affirmatively allege a federal claim, so long as the "vindication of a state-law right necessarily turns on a question of federal law." *Id.* (cleaned up). Jurisdiction is proper in such circumstances because of the "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308, 313 (2005).

Under the *Grable* doctrine, jurisdiction "will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

---

[1]    By filing this supplemental brief in opposition to Plaintiff's motion to remand, Defendants do not waive any right, defense, affirmative defense, or objection, including any challenges to personal jurisdiction over Defendants.

[2]    Defendants also preserve for further appellate review their argument that this case qualifies for federal officer removal, but acknowledge that argument is presently foreclosed by *Connecticut*. *See infra* § III.

disrupting the federal-state balance approved by Congress." *Connecticut*, 83 F.4th at 140 (quoting *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013)).  Whether the federal issue is "necessarily raised" is context-dependent.  *Id.*  The analysis "must start by determining what exactly the necessary elements of [the plaintiff's] well-pleaded state claims *are*."  *Id.* (quotations omitted)  The next question is whether any of those elements "could not be resolved" without applying federal law. *Id.* (alteration adopted).

The Attorney General here brings two causes of action for violations of the Vermont Consumer Protection Act ("VCPA"), which prohibits "unfair or deceptive acts or practices in commerce."  Vt. Stat. Ann. tit. 9, § 2453(a).  The first cause of action targets alleged deceptive acts or practices.  Compl. ¶¶ 176-85.  To succeed, the Attorney General must prove three elements: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product."  *Carter* v. *Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998).  The Attorney General's second cause of action targets allegedly unfair acts or practices.  Compl. ¶¶ 186-94.  There are several factors that courts must consider when deciding whether an act is unfair within the meaning of the VCPA, including "(1) whether the act offends public policy, (2) whether it is 'immoral, unethical, oppressive or unscrupulous,' and (3) 'whether it causes substantial injury to consumers.'"  *Drake* v. *Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (quoting *Christie* v. *Dalmig, Inc.*, 396 A.2d 1385, 1388 (Vt. 1979)).

Whether Defendants' conduct was misleading or "offends public policy" thus cannot be resolved without reaching federal issues because Vermont alleges that Defendants misled consumers and violated public policy by claiming that their products meet or exceed certain federal

standards.[3]  Specifically, the Attorney General claims that Defendants have violated the VCPA by asserting that their products meet—or surpass—federal fuel-economy and environmental standards, while failing to expressly tell consumers that those products still produce emissions and contribute to climate change.  *See, e.g.*, Compl. ¶ 108 (alleging a product is deceptive for stating it "contains seven times the cleaning agents required to meet federal standards").  The complaint asserts that such advertisements are misleading and violate public policy against deceptive advertising, as embodied in the VCPA and "other statutory, regulatory, and/or common law policies and prohibitions against material misrepresentations and nondisclosures, including with respect to environmental benefits and/or environmental products or services."  Compl. ¶ 190.  The complaint thus requires the Court to determine whether Defendants' products in fact meet or surpass federal standards, as advertised, and, if so, whether Defendants' statements are nevertheless misleading and contrary to public policy.  By tying its allegations directly to federal law and standards, the Attorney General has necessarily raised federal issues.

Vermont's allegation that Defendants violated the VCPA by claiming that their products comply with federal standards distinguishes this case from other climate change lawsuits in which *Grable* jurisdiction was rejected.  The complaint in *Connecticut* did not assert that advertisements claiming compliance with federal standards were unlawful.  And the D.C. Circuit affirmed remand of climate-deception claims brought under local consumer-protection laws because the District did not "link its District law claim to federal law."  *District of Columbia* v. *Exxon Mobil Corporation*,

---

[3]   The "public policy" factor must be considered because Vermont's consumer protection statute has been interpreted to require consideration of each factor relevant to a claim of unfair trade practices.  *Compare Drake*, 63 F. Supp. 3d at 393 (noting that whether an act is unfair within the meaning of the VCPA claim is "guided by consideration of" all three factors), *and In re Weaver*, 2015 WL 4722615, at \*6 (Bankr. D. Vt. Aug. 7, 2015) (requiring consideration of all three factors), *with Connecticut*, 83 F.4th at 141 (remanding based on assessment of one but not all factors of the unfairness analysis under the Connecticut statute).

2023 WL 8721812, at *6 (D.C. Cir. Dec. 19, 2023).  Here, by contrast, Vermont's theory of liability is expressly linked to federal law.

The Attorney General argues that "there is no need to determine whether Defendants' products meet or exceed federal EPA standards because . . . there is no allegation that the standards are not met."  ECF No. 49 at 25.  But the complaint repeatedly alleges that Defendants misled consumers and violated public policy by claiming that their products meet or exceed federal standards.  *See, e.g.*, Compl. ¶¶ 108, 115, 117, 190.  For instance, the Attorney General alleges that "Shell['s] claims" about its V-Power Nitro+ Premium fuel are deceptive for stating that "the fuel 'is more efficient,' has 'lower emissions,' and contains seven times the cleaning agents required to meet federal standards." *Id.* ¶ 108.  The Attorney General further alleges that "Shell's website also advertises that this gasoline surpasses the minimum requirements for gasoline detergent additives set by the Environmental Protective Agency and thus has earned the so-called 'Top-Tier' certification." *Id.*  The Attorney General raises similar allegations sounding in federal law against Sunoco.  For example, the Attorney General claims as deceptive an ad that allegedly states that "UltraTech is held out by Sunoco as meeting 'stringent TOP TIER™ standards and exceed[ing] EPA standards for vehicle emissions and engine durability.'" *Id.* ¶ 115.  The Attorney General also alleges that CITGO conveyed a misleading impression when it asserted on its website that TriCLEAN has earned the "'stringent' 'TOP TIER' designation because it 'surpasses the existing standards set forth by the EPA.'" *Id.* ¶ 117.  The Attorney General further attacks as deceptive "claims that with continuous use by consumers TriCLEAN will maximize fuel mileage 'while minimizing exhaust emissions.'" *Id.*  These allegations of deception and unfairness with respect to Defendants' compliance with federal standards were not present in *Connecticut* and necessarily raise federal issues.

This Court has sustained federal jurisdiction on *Grable* grounds for a similar claim brought under the VCPA.  In *Alford* v. *FedEx Ground Package System, Inc.*, the Court held that there was federal question jurisdiction sufficient to support removal when the plaintiffs relied on the federal franchise rule to state a claim.  No. 05-cv-252, 2006 WL 8436220, at *3 (D. Vt. Feb. 1, 2006) (Sessions, J.) ("In order for Alford and Toof to prevail on their VCFA[4] claim, they must first establish that FedEx qualifies as a 'franchisor' under the FTC regulations, that the driving contracts it offered to Plaintiffs were 'franchises,' and that Plaintiffs were 'prospective franchises.'" (citing 16 C.F.R. § 426.1)).  Similarly here, to assess whether the statements and omissions the Attorney General challenges violate the VCPA, the Court will need to assess what the federal standards are and whether the products in question comply with, or surpass, existing standards set forth by the EPA, as well as whether compliance with those federal standards, as evidence of comparative efficiency and reduced emissions, can constitute misleading or unfair conduct.  Thus, the Attorney General has placed in question Defendants' compliance with federal standards—a question the Court must reach in order to resolve the Attorney General's deception and unfairness claims.

The Attorney General appears to argue that even if Defendants' products met those standards, their public statements are actionable because Defendants failed to affirmatively warn about the connection between fossil fuel use and global climate change.  *See* ECF No. 49 at 25. But the complaint seeks civil penalties for "*each* violation of the [VCPA]," Compl. Prayer for Relief (emphasis added), and expressly links its claims to federal standards, *id.* ¶¶ 108, 115, 117, 190; *see* ECF No. 51 at 26-27, so the complaint necessarily raises those federal issues.  The Attorney General "prefers to be in state court, but [the plaintiff] filed a complaint that was

---

4    In 2012, the General Assembly changed the heading for Chapter 63 from "Consumer Fraud" to "Consumer Protection."  *See* 2012 Vt. Acts & Resolves No. 109 Section 2.

removable." *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc.* v. *Chevron Corp.*, No. 18-CV-07477, 2023 WL 7299195, at *3 (N.D. Cal. Nov. 1, 2023) (denying remand motion of climate case based on "the allegations contained in the complaint").

Moreover, the affirmative disclosures about fossil fuels and climate change that the Attorney General seeks necessarily require the Court to consider federal policies relating to the promotion of fossil fuel use, as well as federal energy and environmental policy. For example, through the Clean Air Act, Congress has struck a balance between energy production and environmental protection. Plaintiff's claims require the factfinder here to decide whether that balance is appropriate, or instead whether energy companies should be required to make additional disclosures about the "role of fossil fuels in climate change" designed to tilt the balance away from production of energy through fossil fuels. *See* Compl. Request for Relief (requesting a permanent injunction that includes the "required disclosure of the role of fossil fuels in climate change at every point of sale in the State of Vermont"). Such a determination requires consideration of uniquely federal interests that belong in federal court. The Attorney General's complaint thus necessarily raises federal issues, satisfying *Grable*'s first requirement.

*Connecticut* did not have reason to consider the remaining three elements required for *Grable* jurisdiction, but each is satisfied here. First, the federal issues are actually disputed. The Attorney General alleges that Defendants' statements with respect to compliance with federal standards are false or misleading, which Defendants contest. Moreover, the Attorney General and Defendants dispute whether the failure to affirmatively disclose greenhouse gas emissions violates federal public policy. Second, the issues are substantial. The Attorney General is seeking to fundamentally reshape American energy policy by requiring disclosures of information that she considers necessary in the sale of fossil fuels. Finally, the issues are capable of resolution in federal

court without disrupting the federal-state balance approved by Congress.  Indeed, "relatively few claims brought under the VCFA are likely to allege a violation of [federal standards], so permitting federal jurisdiction in this case is unlikely to open the door to a flood of similar cases from state to federal court."  *Alford*, 2006 WL 8436220, at *3.  Federal courts are the traditional fora for litigation raising federal issues, such as disputes involving transboundary pollution "influencing national energy and environmental policy."  *City of New York* v. *Chevron Corp.*, 993 F.3d 81, 91-92 (2d Cir. 2021).

In sum, the Attorney General's complaint necessarily raises multiple federal issues, including whether the Defendants' statements were false or misleading because their products did not comply with or surpass federal standards and regulations, as they allegedly advertised, and whether the omission of information relating to the emission of greenhouse gases is consistent with or contrary to federal public policy regulating energy and environmental protection.  Because the Attorney General seeks civil penalties for "*each* violation of the Vermont Consumer Protection Act," any court that decides this case will necessarily have to confront these federal issues.  This Court therefore has subject matter jurisdiction pursuant to the *Grable* doctrine.

## II.      Federal Common Law Completely Preempts The Attorney General's Claims.

This Court also has jurisdiction because federal common law completely preempts the Attorney General's claims.  State-law causes of action are completely preempted where federal law "so utterly dominates a preempted field that all claims brought within that field necessarily arise under federal law."  *Marcus* v. *AT&T Corp.*, 138 F.3d 46, 53 (2d Cir. 1998).  Federal common law necessarily governs claims that implicate "uniquely federal interests," such as where "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Texas Indus., Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 640–41 (1981) (citation omitted). Claims necessarily governed by federal common law are removable to federal court, as they

"arise[] under" federal law. *Nat'l Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, 471 U.S. 845, 850 (1985).

Whether federal common law can completely preempt state-law claims "remains open," *Connecticut*, 83 F.4th at 138 n.4, but the Second Circuit has twice suggested that the answer is "yes." In *Nordlicht* v. *New York Telephone Co.*, the court held that "federal law preempts state law in the area of interstate telecommunications" so completely that the plaintiff's "claims must necessarily arise under federal common law." 799 F.2d 859, 862 (2d Cir. 1986). "If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on this claim, the case is removable regardless of what is in the pleading." *Id.* (quoting *Travelers Indemnity Co.* v. *Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)). In light of the Supreme Court's subsequent decision in *Metropolitan Life Insurance Co.* v. *Taylor*, 481 U.S. 58, 66 (1987), the Second Circuit has since acknowledged that "federal common law does not completely preempt state law claims in the area of interstate telecommunications." *Marcus*, 138 F.3d at 54. But the court has continued to recognize that "federal common or statutory law" may establish complete preemption in appropriate circumstances. *Id.* at 53. Similarly, in *Republic of Philippines* v. *Marcos*, the court stated that it is "probably" the case that "the federal common law in the area of foreign affairs is so 'powerful,' or important, as to displace a purely state cause of action of constructive trust," supporting federal jurisdiction in that case. 806 F.2d 344, 354 (2d Cir. 1986). The *Connecticut* court recently described the analysis in both *Marcus* and *Republic of Philippines* as being fundamentally rooted in the completely preemptive effect of federal law in areas where federal common law applies. *See* 83 F.4th at 136, 138 n.4.

This Court should hold that the federal common law of transboundary pollution and foreign affairs completely preempts state law in this case because there is an "overriding federal interest in the need for a uniform rule of decision," *Illinois* v. *City of Milwaukee* ("*Milwaukee I*"), 406 U.S. 91, 105 n.6 (1972), such that "state law cannot be used," *City of Milwaukee* v. *Illinois* ("*Milwaukee II*"), 451 U.S. 304, 313 n.7 (1981).

"Environmental protection is undoubtedly an area within national legislative power" for which federal courts may "fashion" federal common law. *Am. Elec. Power Co.* v. *Connecticut* ("*AEP*"), 564 U.S. 410, 421 (2011) (quotation omitted). The Supreme Court has thus long recognized that "interstate . . . pollution is a matter of federal, not state, law," *Int'l Paper Co.* v. *Ouellette*, 479 U.S. 481, 488 (1987), such that when a dispute involves "air and water in their ambient or interstate aspects, there is a federal common law," *Milwaukee I*, 406 U.S. at 103.

The application of federal law to interstate pollution cases arises from the structure of the U.S. Constitution itself, which "implicitly forbids" States from applying their own laws to resolve "disputes implicating their conflicting rights." *Franchise Tax Bd. of Cal.* v. *Hyatt*, 139 S. Ct. 1485, 1498 (2019) (alteration adopted and quotation omitted).[5] Allowing particular States to apply their own laws to disputes involving interstate pollution would expose energy companies "to a welter of different states' laws" and "undermine important federal policy choices." *City of New York*, 993 F.3d at 93.

The Attorney General's claims fall squarely within the federal common law governing interstate pollution. The relief sought by the Attorney General—a "permanent injunction"

---

[5] The Supreme Court recently reaffirmed that it "has long consulted original and historical understandings of the Constitution's structure and the principles of 'sovereignty and comity' it embraces" in order to "resolve disputes about the reach of one State's power." *Nat'l Pork Producers Council* v. *Ross*, 598 U.S. 356, 376 (2023) (citation omitted).

requiring climate-change disclosures at every point of sale in Vermont, Compl. Prayer for Relief—is targeted directly at controlling interstate pollution allegedly caused by the use of Defendants' fossil fuel products. Indeed, the entire theory of the Attorney General's case is that, if these disclosures are made, consumers will "not . . . purchase" fossil fuels. *Id.* ¶ 173. Vermont's goal is to reduce transboundary pollution. Such a dispute plainly falls within the scope of federal common law.

Likewise, issues concerning the United States' "relationships with other members of the international community must be treated *exclusively* as an aspect of federal law." *Banco Nacional de Cuba* v. *Sabbatino*, 376 U.S. 398, 425 (1964) (emphasis added). Accordingly, the Supreme Court has held that federal common law exists to address "interstate and international disputes implicating . . . our relations with foreign nations." *Texas Indus.*, 451 U.S. at 641. By attempting to force Defendants to reduce or eliminate their fossil fuel production and sale, the Attorney General seeks to upset the balance between energy production and environmental protection struck by a network of international treaties. Notice of Removal ¶¶ 58-66.

The Attorney General erroneously contends that federal law cannot completely preempt state law unless "Congress has clearly manifested an intent to make a specific action within a particular area removable." ECF No. 49 at 20 (cleaned up). To be sure, when analyzing federal *statutes* for preemptive effect, the Supreme Court has focused on whether "Congress has clearly manifested an intent to make causes of action . . . removable to federal court." *Metro. Life Ins.*, 481 U.S. at 66. But the Court has not addressed whether the same test applies in the context of *federal common law*. The Second Circuit in *Marcus*—citing *Taylor*—applied a test based on congressional intent to the federal common law of interstate telecommunications, 138 F.3d at 54, but that made sense given the court's prior conclusion that the federal common law of interstate

telecommunications *emerged from* the "comprehensive legislation" of the Federal Communications Act, *id.* at 53. The court was thus analyzing the question whether, although "the FCA does not preempt state law claims directly" in light of *Taylor*, it could "manage[] to do so indirectly under the guise of federal common law." *Id.* at 54. The court in *Marcus* answered no because, where federal common law derives from federal statutory law, "the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field." *Id.*

But congressional intent does not control the complete displacement of state law where the constitutional structure itself, rather than comprehensive federal legislation, requires the exclusive application of a federal rule of decision, such as in the fields of transboundary pollution and foreign affairs. *See AEP*, 564 U.S. at 421 ("[F]ederal common law addresses subjects within national legislative power where Congress has so directed or where the basic scheme of the Constitution so demands" (citation omitted)). Otherwise, a court would not need to ask whether "federal common law . . . so utterly dominates a preempted field" in analyzing its preemptive effect, *Marcus*, 138 F.3d at 53, as that question would be answered solely by statute. Moreover, when the Constitution's structure dictates that federal common law must govern, it is because "our federal system does not permit the controversy to be resolved under state law." *Texas Indus.*, 451 U.S. at 641. In other words, federal law exists because state law "cannot be used" at all. *Milwaukee II*, 451 U.S. at 313 n.7. Additional reference to a federal statute to define the scope of federal common law is unnecessary in such circumstances. Indeed, the Attorney General has previously conceded that the application of the federal common law of interstate pollution arises from the constitutional structure, not from any federal statutory law, and that, accordingly, "there is no issue of congressional intent" when courts are interpreting the federal common law of

interstate pollution.  *See* Br. for Resp'ts Connecticut, New York, California, Iowa, Rhode Island, Vermont, and the City of New York at 37-41, *AEP*, 564 U.S. 410 (2011) (No. 10-174), 2011 WL 915093, at *37-*41.

To the extent the Attorney General seeks to argue that complete preemption does not apply here because federal law does not provide a substitute cause of action, the Second Circuit made clear in *City of New York* that any claims in the area of transboundary pollution must be "federal common law claims," which necessarily substitute for the state-law claims asserted.  993 F.3d at 101.[6]  The claims here are thus completely preempted regardless of whether Congress has narrowed the federal cause of action through statute.  Here, the structure of the *Constitution* requires a federal rule of decision to resolve disputes involving transboundary pollution and foreign affairs.  *See Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 393 n.8 (1987) (explaining that the Court held in *Oneida Indian Nation* v. *County of Oneida*, 414 U.S. 661, 675 (1974), that a "state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus completely pre-empted and arises under federal law").  The Constitution, not a federal statute, is what gives federal law its completely preemptive effect.  The Second Circuit's conclusion that "the scope of federal common law causes of action" for transboundary pollution does not encompass claims premised on global greenhouse

---

[6]   The D.C. Circuit's recent conclusion that "there is no federal common law of interstate air pollution after the Clean Air Act" cannot be reconciled with *City of New York*.  *District of Columbia*, 2023 WL 8721812, at *4.  As the Second Circuit recognized, "state law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court-made standard with a legislative one."  *City of New York*, 993 F.3d at 98.  Therefore, even after the Clean Air Act, federal common law continues to displace state law in this area.

gas emissions, *City of New York*, 993 F.3d at 102-103, is thus fully consistent with the conclusion

that federal common law has complete preemptive effect here.[7]

### III.   This Action Satisfies The Requirements Of The Federal Officer Removal Statute.

Defendants removed this action because the claims necessarily take aim at Defendants'

production and supply of oil and gas under the guidance, supervision, and control of the federal

government.  *See* 28 U.S.C. § 1442(a)(1).  The federal officer removal statute authorizes removal

where, as here, defendants are "person[s] under the statute" who "acted under color of federal

office" and who have "a colorable federal defense." *Agyin* v. *Razmzan*, 986 F.3d 168, 174 (2d Cir.

2021) (cleaned up).  Defendants acknowledge that the Second Circuit in *Connecticut* interpreted

the federal officer removal statute to impose a strict causal-nexus requirement that would foreclose

the statute's application to this suit on the current record.  *See Connecticut*, 83 F.4th at 144-145 &

145 n.7.   Nevertheless, Defendants preserve the argument, for purposes of potential further

appellate review, that, "[b]y the Removal Clarification Act [of 2011], Congress broadened federal

officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*,

with acts under color of federal office." *Latiolais* v. *Huntington Ingalls, Inc.*, 951 F.3d 286, 292

(5th Cir. 2020) (en banc).[8]  Under that standard, and based on the expanded record presented here

---

[7]   In any event, in appropriate cases, some federal cause of action may exist for transboundary pollution claims where the source is a foreign state:  for example, only federal law could govern a claim for pollution from Canada affecting Michigan.  As the Second Circuit explained, although the Clean Air Act displaces claims concerning *domestic* emissions, "claims concerning [foreign] emissions still require [the court] to apply federal common law." *City of New York*, 993 F.3d at 95 n.7.  While the availability, nature, and scope of a federal cause of action for transboundary pollution is for adjudication on the merits, federal law completely supplants state law for jurisdictional purposes.

[8]   In *Connecticut*, the Second Circuit addressed this argument only in a footnote, stating that the Circuit had continued to apply a causal-nexus requirement in decisions post-dating the Removal Clarification Act, citing *Agyin*.  *Connecticut*, 83 F.4th at 145 n.7 (citing *Agyin*, 986 F.3d at 179).  But the *Agyin* court did not have to consider whether a "connected or associated"

compared to *Connecticut*, *see* ECF No. 51 at 31-34; ECF No. 76 at 2 & n.2, a sufficient connection exists between Defendants' actions taken under the direction of federal officers and the challenged conduct in this lawsuit.  *See, e.g.*, *Cnty. Bd. of Arlington Cnty.* v. *Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021) (noting that the "'connection or association' standard is broader than the old 'causal nexus' test that we abandoned after the Removal Clarification Act of 2011").

## CONCLUSION

This Court should deny Plaintiff's Motion to Remand.

---

test would apply because the defendant was sued "for" the medical care he provided under federal authority, not conduct "relating to" activities under federal officers, which Congress also has stated permits removal.  *See Agyin*, 986 F.4th at 173, 179; 28 U.S.C. § 1442(a)(1).

DATED:  January 5, 2024                    Respectfully Submitted,


   */s/* Ritchie E. Berger           
Ritchie E. Berger

Ritchie E. Berger
**DINSE P.C.**
209 Battery Street, P.O. Box 988
Burlington, VT 05401
Tel.:  (802) 864-5751
Fax:  (802) 862-6409
Email:  rberger@dinse.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3089
Fax: (212) 492-0089
Email: twells@paulweiss.com
Email: dtoal@paulweiss.com

Jeannie S. Rhee (*pro hac vice*)
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
Fax: (212) 223-5012
Email: jrhee@paulweiss.com

*Counsel for Defendants Exxon Mobil Corp. &*
*ExxonMobil Oil Corp.*

_/s/_ Matthew B. Byrne
Matthew B. Byrne

Matthew B. Byrne
**GRAVEL & SHEA**
76 St. Paul Street, 7th Floor
Burlington, VT 05401
Tel.:  (802) 658-0220
Fax:  (802) 658-1456
Email:  mbyrne@gravelshea.com

David C. Frederick (_pro hac vice_)
James M. Webster, III (_pro hac vice_)
Daniel S. Severson (_pro hac vice_)
Grace W. Knofczynski (_pro hac vice_)
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: dfrederick@kellogghansen.com
Email: jwebster@kellogghansen.com
Email: dseverson@kellogghansen.com
Email: gknofczynski@kellogghansen.com

_Counsel for Defendants Shell plc (f/k/a Royal
Dutch Shell plc), Shell USA, Inc. (f/k/a Shell Oil
Company), and Shell Oil Products Company LLC_

16

*/s/* Matthew B. Byrne  _____
Matthew B. Byrne

Matthew B. Byrne
**GRAVEL & SHEA**
76 St. Paul Street, 7th Floor
Burlington, VT 05401
Tel.:  (802) 658-0220
Fax:  (802) 658-1456
Email:  mbyrne@gravelshea.com

Tracie J. Renfroe (*pro hac vice*)
**KING & SPALDING LLP**
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Tel: (713) 751-3200
Fax: (713) 751-3290
Email: trenfroe@kslaw.com

Oliver P. Thoma (*pro hac vice*)
**WEST WEBB ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Tel.: (979) 694-7000
Fax: (979) 694-8000
Email: oliver.thoma@westwebblaw.com

*Counsel for Defendant Motiva Enterprises LLC*

/s/ Timothy C. Doherty, Jr.
Timothy C. Doherty, Jr.

Timothy C. Doherty, Jr.
Walter E. Judge
**DOWNS RACHLIN MARTIN PLLC**
Courthouse Plaza
199 Main Street
Burlington, VT 05401
Tel.:  (802) 863-2375
Fax:  (802) 862-7512
Email: tdoherty@drm.com
Email: wjudge@drm.com

J. Scott Janoe (*pro hac vice*)
**BAKER BOTTS LLP**
910 Louisiana Street
Houston, TX 77002
Tel.: (713) 229-1553
Fax: (713) 229-7953
Email: scott.janoe@bakerbotts.com

Megan H. Berge (*pro hac vice*)
Sterling A. Marchand (*pro hac vice*)
**BAKER BOTTS LLP**
700 K Street N.W.,
Washington, D.C. 20001
Tel.: (202) 639-7700
Fax: (202) 639-7890
Email: megan.berge@bakerbotts.com
Email: sterling.marchand@bakerbotts.com

*Counsel for Defendants Sunoco LP, Sunoco, LLC,
ETC Sunoco Holdings LLC, Energy Transfer
(R&M), LLC, Energy Transfer LP*

*/s/* Pietro J. Lynn
Pietro J. Lynn

Pietro J. Lynn
**LYNN, LYNN, BLACKMAN &**
**MANITSKY, P.C.**
76 St. Paul Street, Suite 400
Burlington, VT 05401
Tel.:  (802) 860-1500
Fax:  (802) 860-1580
Email:  plynn@lynnlawvt.com

Nathan P. Eimer (*pro hac vice*)
Lisa S. Meyer (*pro hac vice*)
**EIMER STAHL LLP**
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel.: (312) 660-7600
Fax: (312) 692-1718
Email: neimer@eimerstahl.com
Email: lmeyer@eimerstahl.com

Robert E. Dunn (*pro hac vice*)
**EIMER STAHL LLP**
99 S. Almaden Boulevard, Suite 642
San Jose, CA 95113
Tel.: (408) 889-1690
Fax: (312) 692-1718
Email: rdunn@eimerstahl.com


*Counsel for Defendant*
*CITGO Petroleum Corp.*