UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STATE OF VERMONT,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )    Case No. 2:21-cv-260
                                     )
EXXON MOBIL CORPORATION,             )
EXXONMOBIL OIL CORPORATION,          )
ROYAL DUTCH SHELL PLC, SHELL         )
OIL COMPANY, SHELL OIL               )
PRODUCTS COMPANY LLC, MOTIVA         )
ENTERPRISES LLC, SUNOCO LP,          )
SUNOCO LLC, ETC SUNOCO               )
HOLDINGS LLC, ENERGY TRANSFER        )
(R&M) LLC, ENERGY TRANSFER           )
LP, and CITGO PETROLEUM              )
CORPORATION,                         )
                                     )
        Defendants.                  )

## OPINION AND ORDER

The State of Vermont (the "State") brings this action
against Exxon Mobil Corporation and other fossil fuel companies
("Defendants") claiming Defendants violated the Vermont Consumer
Protection Act ("VCPA") by, among other things, failing to
inform consumers about the impacts of fossil fuel products on
climate change.  The case was originally filed in state court,
and Defendants removed it here.  The State now moves to remand.
Defendants oppose the motion, arguing that this Court has both
federal subject matter and diversity jurisdiction.

For reasons set forth below, the Court finds that the State
is not asserting any federal causes of action, that the

Complaint instead invokes only Vermont's consumer protection
law, and that there is no diversity of citizenship.  The motion
to remand is therefore granted.

### Factual Background

The State commenced this action by filing a Complaint in
Vermont Superior Court.  The Complaint alleges Defendants
violated the VCPA by engaging in deceptive acts and unfair
practices in the marketing, distribution, and sale of fossil
fuel products to consumers in Vermont.  The State claims
Defendants knew for decades that use of their products would be
a major cause of harmful climate change, yet actively
misrepresented and concealed that information in marketing their
products to Vermont consumers.  Defendants also allegedly
engaged in false advertising and deceptive efforts to portray
their products as climate-friendly without also disclosing known
climate impacts, and to sow false doubts about climate change.
This conduct allegedly had a material impact on consumers and
the choices they made about the purchase and use of fossil
fuels.

The State brings two causes of action, one alleging
deceptive acts or practices and the other alleging unfair
business practices.  Both causes of action are brought under the
VCPA.  For relief, the State seeks an injunction requiring
Defendants to refrain from further deception and to take

2

affirmative steps to rectify their prior allegedly-deceptive acts.  The State also asks for disgorgement of amounts Defendants obtained as a result of their actions, civil penalties under the VCPA, and costs of litigation and investigation.  The State is not seeking monetary relief or compensation for environmental harm.

Defendants removed the case to this Court.  Their notice of removal cites several bases on which the Court may allegedly assert jurisdiction.  Those include: (1) that the State's claims arise under federal common law because they implicate transboundary pollution, foreign affairs, and greenhouse gas emissions; (2) that the Complaint raises disputed federal questions about compliance with fuel economy and environmental standards; (3) that the action allegedly falls under the federal officer removal statute, 28 U.S.C. § 1442, as Defendants have engaged in fossil fuel production under federal direction for many years; (4) that the Complaint raises issues which necessarily arise out of, or in connection with, operations governed by the Outer Continental Shelf Lands Act ("OCSLA"); (5) that Defendants' fossil fuel production and promotional activities occurred on "federal enclaves"; and (6) diversity of citizenship.  ECF No. 1.

The State moves to remand, arguing that none of these arguments have merit and that the case belongs in state court.

The motion is opposed.  In light of a recent Second Circuit ruling in a similar action, discussed below, the Court ordered supplemental briefing.  That briefing has now been submitted.

## Discussion

### I.   Removal and Federal Court Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Accordingly, a defendant may remove a state court action to federal court if the plaintiff could have originally filed suit in federal court, based on either federal-question or diversity jurisdiction.  *See* 28 U.S.C. §§ 1331, 1332.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A plaintiff may therefore "avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense."  *Fax*

*Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998).[1]

"[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Nonetheless, "a plaintiff cannot avoid removal by artful pleading, *i.e.*, by framing in terms of state law a complaint the real nature of which is federal, regardless of plaintiff's characterization, ... or by omitting to plead necessary federal questions in a complaint." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27-28 (2d Cir. 1988) (internal citations and quotation marks omitted). "Necessary federal questions" are present when a well-pleaded complaint appears "as if it arises under state law where the plaintiff's suit is, in essence, based on federal

---

[1] Defendants submit that they have "colorable" federal defenses that must be heard in federal court. Their cited defenses do not, however, provide grounds for federal jurisdiction. *See, e.g., City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 709 (3d Cir. 2022), *cert. denied sub nom. Chevron Corp. v. City of Hoboken, New Jersey*, 143 S. Ct. 2483 (2023) (declining jurisdiction on the basis of First Amendment arguments).

law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005).

The Second Circuit has held that there are only three situations in which a complaint that does not allege a federal cause of action may nonetheless "arise under" federal law for purposes of subject matter jurisdiction: first, if Congress expressly provides, by statute, for removal of state law claims; second, if the state law claims are completely preempted by federal law; and third, if the vindication of a state law right necessarily turns on a question of federal law. *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (citations omitted). On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted).

## II.  Recent Second Circuit Law

The Second Circuit's recent decision in *State of Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023) (hereinafter "*Connecticut*") addressed several of the jurisdictional questions raised here. Much like the State's action in this case, the State of Connecticut sued a fossil fuel company claiming violations of Connecticut's unfair trade practices statute. The company removed the case to federal court, and the federal district court ordered it remanded. On

appeal, the Second Circuit directly addressed the following
issues: (1) whether the State pled a federal question on the
face of the Complaint, and whether an exception to the well-
pleaded complaint rule applied; (2) whether the State's unfair
trade practices claim raised a federal common law claim because
it concerned transboundary pollution; (3) whether Defendants
were acting under an officer of the United States and the color
of such office; and (4) whether there was federal question
jurisdiction because the case involved defendants' extraction of
oil and gas on land leased from the United States on the outer
continental shelf. *Connecticut*, 83 F.4th at 129.  The Second
Circuit answered each of these questions in favor of the State
of Connecticut, found no basis for federal subject matter
jurisdiction, and affirmed the district court's remand.  *Id.* at
138-47.  This Court's review of the parties' arguments is guided
by the *Connecticut* decision, and by recent decisions from other
federal courts on essentially this same subject.

## III. The *Grable* Doctrine

Defendants contend that the State's claims, though
presented as purely state law causes of action, "arise under"
federal law and therefore warrant federal court jurisdiction
pursuant to the *Grable* doctrine.  *See Grable & Sons Metal Prods.*
*Inc. v. Darue Eng'g & Mfg*, 545 U.S. 308, 313 (2005).  *Grable*
presents an exception to the well-pleaded complaint rule,

7

allowing federal jurisdiction if "vindication of the state-law
right asserted necessarily turns on a question of federal law."
*Connecticut*, 83 F.4th at 138 (quoting *Fracasse*, 747 F.3d at 144
(internal alterations omitted)).  Jurisdiction will lie under
*Grable* "if a federal issue is: (1) necessarily raised, (2)
actually disputed, (3) substantial, and (4) capable of
resolution in federal court without disrupting the federal-state
balance approved by Congress."  *Connecticut*, 83 F.4th at 139-40.
In *Connecticut*, the Second Circuit reviewed the claims in the
complaint and found the *Grable* exception did not apply.  *Id.* at
140-42.  This Court reaches the same conclusion with respect to
the VCPA claims asserted here.

Defendants argue that the State's claims necessarily raise
federal issues because of certain advertising practices cited in
the Complaint.  Specifically, the State alleges that Defendants'
advertisements claimed their products met or exceeded federal
fuel economy and environmental standards without also telling
consumers that those same products contributed to climate
change.  Defendants submit that those allegations will require
the Court to determine whether their products did, in fact, meet
or surpass federal standards, and therefore raise questions of
federal law.

The crux of the State's Complaint is that Defendants failed
to provide consumers in Vermont with information that would have

necessarily informed their decisions about buying and using fossil fuels.  While the Complaint cites certain advertisements in which Defendants claimed their products met or exceeded federal standards, those factual allegations merely provide context for the State's claims of factual omissions.  The State does not claim that Defendants' advertisements were untrue.  *See* ECF No. 85 at 10 (State's supplemental brief explaining that "the Complaint does *not* allege a violation of EPA standards, or that Defendants' products do not surpass those standards, or that Defendants have violated any federally prescribed duty").  The State is instead claiming that those advertisements did not tell the whole story, and misled consumers by failing to mention the alleged environmental harm that would result from the use of fossil fuels.

Accordingly, the cited allegations do not satisfy any of the *Grable* criteria.  *See Connecticut*, 83 F.4th at 139-40.  The allegations do not "necessarily raise" a federal issue since compliance with federal standards is not in question.  Indeed, there is no "actual dispute" about the accuracy of the alleged advertisements.  The allegations are not significant, since the focus of the State's claim is the omission, not the inclusion, of certain facts.  And finally, with no necessarily-raised federal issue, the assertion of subject matter jurisdiction

would plainly "disrupt[] the federal-state balance approved by Congress."  *Connecticut*, 83 F.4th at 140.

Defendants also argue that *Grable* applies because the Complaint necessarily raises federal policy questions regarding government promotion of fossil fuels, including natural gas. Defendants cite the Clean Air Act as an example, claiming that the Act strikes a balance between energy production and environmental protection.  Their argument is that requiring fossil fuel companies to provide information about climate change, thereby "tilt[ing] the balance away from the production of energy through fossil fuels," implicates federal energy and environmental policy.  ECF No. 87 at 11.

In *Connecticut*, the Second Circuit rejected a similar argument when defendant Exxon Mobil argued that Connecticut's complaint necessarily raised issues of transboundary pollution. The court explained that for purposes of the *Grable* exception, the federal issue must be "necessarily" raised, and the mere presence of a federal issue is "insufficient."  *Connecticut*, 83 F.4th at 140; *see also New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (holding that a "state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law") (quoting *Grable*, 545 U.S. at 314).  The *Connecticut* court observed that "Exxon Mobil cannot establish *Grable* jurisdiction

10

simply by gesturing toward ways in which this case loosely
implicates" a question of federal law.  83 F.4th at 140.  "[I]f
a 'court could ... resolve[ ] the case without reaching the
federal issues,' then 'the claims do not necessarily raise a
federal issue.'"  *Id.* (quoting *New York v. Shinnecock Indian
Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012)).

    Here, the State brings two claims under the VCPA, one
alleging deception and the other alleging unfairness.  The
deception cause of action has the following elements: (1) the
representation or omission at issue must have been likely to
mislead a consumer; (2) the consumer's interpretation of the
representation was reasonable under the circumstances; and (3)
the misleading representation was material in that it was likely
to affect the consumer's purchasing decision.  *See Jordan v.
Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5.  For the unfairness claim,
this Court has previously noted that, in Vermont, "whether an
act is unfair is guided by consideration of several factors,
including (1) whether the act offends public policy, (2) whether
it is immoral, unethical, oppressive or unscrupulous, and (3)
whether it causes substantial injury to consumers."  *Drake v.
Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (cleaned
up); *see also Christie v. Dalmig, Inc.*, 396 A.2d 1385, 1388 (Vt.
1979) (adopting factors considered by the Federal Trade
Commission ("FTC") in addressing whether an act or practice is

11

unfair).  A plaintiff does not need to satisfy all three criteria
to support a finding of unfairness, though in this case the
allegations suffice for each.[2]

As the Second Circuit explained in *Connecticut*, the
fundamental question is whether a court can resolve these causes
of action without reaching a question of federal law.  83 F.4th
at 140.  With respect to deception under the VCPA, the elements
focus on misleading representations.  That those
misrepresentations might touch upon broad questions of federal
energy policy does not render them subject to federal subject
matter jurisdiction.  *See, e.g., id.* at 142 ("We entirely agree
with the district court's analysis of this point: 'Connecticut
alleges that ExxonMobil lied to Connecticut consumers, and that
these lies affected the behavior of those consumers.  The fact

---

[2]  The Vermont Supreme Court, citing FTC guidance from 1964,
stated in *Christie* that "[w]hether one or all of these factors
must be present in the circumstances is a question the
Commission has not answered."  396 A.2d at 1388 (citing
Statement of Basis and Purpose of Trade Regulation Rule 408,
Unfair or Deceptive Advertising and Labeling of Cigarettes in
Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355
(1964)).  However, more recent FTC guidance states that "[a]ll
three criteria do not need to be satisfied to support a finding
of unfairness.  A practice may be unfair because of the degree
to which it meets one of the criteria or because to a lesser
extent it meets all three."  *See McLaughlin Ford, Inc. v. Ford
Motor Co.*, 473 A.2d 1185, 1192 n.15 (Conn. 1984) (citing
Statement of Basis and Purpose, Disclosure Requirements and
Prohibitions Concerning Franchising and Business Opportunity
Ventures, 43 Fed. Reg. 59,614, 59,635 (1978)).

that the alleged lies were about the impacts of fossil fuels on the Earth's climate' is immaterial.").

The unfairness claim is similarly straightforward. *See id.* ("Analyzing the unfairness claim is not much harder.").  The Complaint alleges that Defendants' conduct offended Vermont's public policy against deception as reflected in the VCPA. Nothing in that allegation pertains in any way to federal energy policy, or to any other federal issue. *See id.* (concluding that an alleged violation of a state's public policy against deception had "absolutely nothing to do with" the federal common law of transboundary pollution).  Defendants' actions are claimed to have been unscrupulous, misleading consumers about the impact of their purchases on climate change, and the injuries to consumers are alleged to have been substantial.

Because the State's claims under the VCPA can be resolved without addressing a federal issue, and because no federal issue is necessarily raised, the *Grable* exception to the well-pleaded complaint rule does not apply.

## IV.  Federal Common Law and Complete Preemption

Defendants also ask the Court to "hold that the federal common law of transboundary pollution and foreign affairs completely preempts state law in this case."  ECF No. 87 at 14. As noted previously, the Second Circuit's *Grable* analysis found that Connecticut's claim of unfair acts or practices had

"absolutely nothing to do with" the federal common law of transboundary pollution. *Connecticut*, 83 F.4th at 142.  The same may be said of Vermont's VCPA claims with respect to both transboundary pollution and foreign affairs.  *See, e.g., id.; see also Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 44 (D. Mass. 2020) ("Contrary to ExxonMobil's caricature of the complaint, the Commonwealth's allegations do not require any forays into foreign relations or national energy policy.  It alleges only corporate fraud.  Whether ExxonMobil was honest or deceitful in its marketing campaigns and financial disclosures does not necessarily raise any federal issue whatsoever.").

Nonetheless, the *Connecticut* decision did not address complete preemption, and Defendants raise it here.[3]  The State's first response is that Defendants have waived this argument. Defendants previously stated that their opposition to remand does "not assert[] a preemption defense as the basis for federal jurisdiction."  ECF No. 51 at 21.  They now contend that their concession was limited to "ordinary" preemption and did not touch upon "complete" preemption.  ECF No. 76 at 2 n.3.  The *Connecticut* decision noted the distinction between ordinary and

---

[3]  The *Connecticut* decision noted that the question of whether the state law claims were completely preempted by federal law would have been "squarely present" but for the defendant's explicit concession that it was not raising the issue.  83 F.4th at 138 n.4.

complete preemption, and that the Second Circuit has not yet
resolved whether federal common law will completely preempt
state law in a case brought against fossil fuel companies.  83
F.4th at 138 n.4 ("A little over two years ago, in *City of New
York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), we
acknowledged that the question remains open to at least some
extent in our Circuit.").  Although Defendants' concessions
suggest a waiver of the preemption issue,[4] their filings were
arguably ambiguous with respect to the application of complete
preemption.  The Court is therefore compelled to address that
issue.

Defendants argue for complete preemption on the basis of
federal common law.  As a general matter, "[f]ederal common law
applies only in those limited situations where a uniform
national rule is necessary to further the interest of the
federal government, such as claims involving the obligations and
rights of the United States and its officials or in those few
areas involving 'uniquely federal interests.'"  *Marcus v. AT&T
Corp.*, 138 F.3d 46, 53 (2d Cir. 1998) (quoting *Boyle v. United
Techs. Corp.*, 487 U.S. 500, 504 (1988)).  "In a nutshell,

---

[4]  Defendants' concessions appear to have been in response to the
State's argument that "federal common law would not provide a
basis for removal absent complete preemption of state law," and
that Defendants had failed to allege "any recognized basis for
invoking the artful pleading doctrine," including "complete
preemption."  ECF No. 49 at 21, 29-30.

federal common law exists only in the few and restricted enclaves where a federal court is compelled to consider federal questions that cannot be answered from federal statutes alone." *City of New York*, 993 F.3d at 89 (cleaned up). "The Supreme Court has cautioned against the broad use of federal common law." *Marcus*, 138 F.3d at 53 (citing *Miree v. DeKalb Cnty.*, 433 U.S. 25, 31–32 (1977)).

Similarly, complete preemption typically "applies only in the very narrow range of cases where 'Congress has clearly manifested an intent' to make a specific action within a particular area removable." *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67–68 (1987)). In *Marcus*, for example, the Second Circuit concluded that "absent some express statement or other clear manifestation from Congress that it intends the complete preemption doctrine to apply, we believe that federal common law does not completely preempt state law claims in the area of interstate telecommunications." 138 F.3d at 54. As the United States Court of Appeals for the District of Columbia Circuit recently noted, "it is unclear whether federal common law could serve as the basis for removal under the artful pleading doctrine." *Dist. of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 151 (D.C. Cir. 2023).

Defendants premise their federal common law preemption argument upon the assertion that, although pled as a state-law

consumer protection action, this case is about air pollution. *See* ECF No. 87 at 15 (Defendants' supplemental brief asserting that "Vermont's goal is to reduce transboundary pollution."). Defendants also submit that this case implicates aspects of certain international treaties, and that such treaties are managed exclusively through federal law.  ECF No. 87 at 15 (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964)).  In both instances, Defendants argue that federal common law necessarily applies, and that such law has complete preemptive effect.

The Complaint makes clear, however, that this case is not about air pollution.  Nor is it about matters involving international treaties.  It is about deception and unfair business practices that allegedly occurred in the State of Vermont.  As a result, there is no federal cause of action that would substitute for the VCPA.  "Because Congress has not acted to displace the state-law claims, and federal common law does not supply a substitute cause of action, the state-law claims are not completely preempted." *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 710 (8th Cir. 2023), *cert. denied sub nom. Am. Petroleum Inst. v. Minnesota*, No. 23-168, 2024 WL 72389 (U.S. Jan. 8, 2024).

For support of their preemption claim, Defendants rely in part upon the Second Circuit's reasoning in *City of New York*.

17

ECF No. 51 at 12, 14, 21, 22-24; 87 at 17.  That reliance is misplaced.  *City of New York* was a nuisance action seeking damages for harm allegedly caused by greenhouse gas emissions. 993 F.3d at 88.  While the City portrayed its claim as limited to local shoreline erosion, *id.* at 91, the Second Circuit interpreted the claim as far broader:

> To state the obvious, the City does not seek to hold
> the Producers liable for the effects of emissions
> released in New York, or even in New York's
> neighboring states.  Instead, the City intends to hold
> the Producers liable, under New York law, for the
> effects of emissions made around the globe over the
> past several hundred years.  In other words, the City
> requests damages for the cumulative impact of conduct
> occurring simultaneously across just about every
> jurisdiction on the planet.
>
> Such a sprawling case is simply beyond the limits of
> state law.

*Id.* at 92.  *City of New York* also observed that "[i]f the Producers want to avoid all liability, then their only solution would be to cease global production altogether." *Id.* at 93. Consequently, the Second Circuit concluded that "the City's lawsuit would regulate cross-border emissions in an indirect and roundabout manner" and risk "subjecting the Producers' global operations to a welter of different state' laws [that] could undermine important federal policy choices." *Id.*

This case is much narrower.  Here, the State brings a two-count consumer protection action claiming deceptive and unfair practices that took place exclusively within the State of

Vermont.  The requested relief relates to the dissemination of
information, and compliance would require nothing of Defendants
with respect to their continued energy production.  Moreover,
*City of New York* made clear that it was reviewing a claim
brought originally in federal court and was therefore "free to
consider the Producers' preemption defense on its own terms, *not
under the heightened standard unique to the removability
inquiry*."  *Id.* at 94 (emphasis supplied).  *City of New York* thus
does not support Defendants' claim of removability.[5]

Even if the Court were to accept Defendants' argument that
this case is essentially about air pollution, the Court would
not apply federal common law.  Instead, following *City of New
York* and other circuit court decisions across the country, the
Court would consider the preemptive impact of the Clean Air Act.
*Id.* at 95; *see also, e.g., Dist. of Columbia*, 89 F.4th at 151
("Whether the District's suit may go forward thus depends on the
preemptive effect of the Clean Air Act, not on the preemptive
effect of federal common law."); *Rhode Island v. Shell Oil Prod.
Co.*, 35 F.4th 44, 55-56 (1st Cir. 2022) (concluding that
"Congress displaced the federal common law of interstate
pollution"), *cert. denied*, 143 S. Ct. 1796 (2023).  "In the

---

[5] After determining that federal common law could apply, *City of
New York* concluded that the federal common law claims "concerned
with domestic greenhouse gas emissions" were displaced by the
Clean Air Act.  *Id.* at 95.

Clean Air Act, Congress displaced federal common law through comprehensive regulation, but it did not completely preempt state law, nor did it provide an independent basis for removal, as it has done in many other statutes." *Dist. of Columbia*, 89 F.4th at 152.

Defendants argue that the D.C. Circuit's recent ruling in *District of Columbia* is not persuasive because it "cannot be reconciled with *City of New York*." ECF No. 87 at 17 n.6. In *City of New York,* the Second Circuit first found that "the City's claims must be brought under federal common law," then proceeded to find that federal common law had been displaced by the Clean Air Act. 993 F.3d at 95. That displacement, the court held, did not revive the viability of a state law nuisance claim brought in federal court. *Id.* at 98. "[S]tate law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court-made standard with a legislative one." *Id.* The claims in this case, however, do not "demand a unified federal standard." *Id.* As explained previously, the claims here concern actions that were limited in scope to the State of Vermont and to information provided within the State. No federal law, whether court-made or legislative, completely preempts such claims.

Defendants further contend that this case is preempted by federal common law not because of any sort of pronouncement by Congress, but instead by virtue of the design of the Constitution itself.  They claim support in part from *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981), in which the Supreme Court noted that when Congress is silent and "there exists a significant conflict between some federal policy or interest and the use of state law, the Court has found it necessary, in a few and restricted instances to develop federal common law."  *Id.* at 313 (cleaned up).  Such a general statement does not support Defendants' position, since this is not one of the "few and restricted instances" in which federal common law comes into play.  *Id.*  Here, the State brings claims for deception and unfair business practices under Vermont law.  Such claims do not give rise to any sort of interstate conflict or other Constitutional concern, and the Court finds no sound basis for complete federal preemption.

This is one of a host of cases brought across the country in which a state or local government claims "that energy companies have promoted fossil fuels while concealing their impacts on climate change.  In each of these cases, the companies have removed to federal court, only to have the suits remanded to state court."  *Dist. of Columbia*, 89 F.4th at 149 n.1 (collecting cases).  Where defendants have asserted federal

common law as a basis for removal, that argument has been uniformly rejected. *See Minnesota*, 63 F.4th at 710-11; *City of Hoboken*, 45 F.4th at 707-08; *Rhode Island*, 35 F.4th at 55-56; *Mayor of Baltimore v. BP P.L.C.*, 31 F.4th 178, 206 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795; *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1262 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023). Defendants offer no persuasive reason why this case should be the exception, and the Court finds that complete preemption does not support removal.

## V.   Federal Officer Removal Statute

Defendants have argued that removal is proper under the federal officer removal statute, as the State is allegedly "tak[ing] aim at Defendants' production and supply of oil and gas under the guidance, supervision, and control of the federal government. *See* 28 U.S.C. § 1442(a)(1)." ECF No. 87 at 18; *see also* ECF No. 51 at 39. In their supplemental briefing, Defendants concede that this argument is "presently foreclosed by *Connecticut*" and that they raise it only to preserve it for "further appellate review." ECF No. 87 at 6 n.1; *see id.* at 18-19 ("Defendants acknowledge that the Second Circuit in *Connecticut* interpreted the federal officer removal statute to impose a strict causal-nexus requirement that would foreclose the statute's application to this suit on the current record.").

"It is well-settled law that litigants are bound by the concessions of freely retained counsel." *Connecticut*, 83 F.4th at 138 (internal quotations marks and citation omitted). The Court therefore applies the *Connecticut* holding to the facts of this case and concludes that removal is not proper on this basis. *Id.* at 145. The Court also notes that while Defendants criticize the Second Circuit for applying a causal-nexus standard, that court also found,

> [e]ven more fundamentally, [that] this case presents a total mismatch between the business practices that Exxon Mobil asserts were subject to federal control and supervision (its actual production of fossil fuels) and the business practices of which Connecticut complains (its marketing and public-relations campaigns to assuage consumers' fears about the environmental impacts of those fossil fuels).

*Id.* For each of the reasons stated in the *Connecticut* decision, the Court finds that Defendants "cannot invoke federal-officer removal jurisdiction over [Vermont's VCPA] claims in this action." *Id.*

## VI. Removal Under OCSLA

The *Connecticut* decision also rejected the argument for removal under OCSLA, which provides for federal jurisdiction over actions arising out of operations on the outer continental shelf. *Id.* at 145-47; *see* 43 U.S.C. § 1349(b)(1)(A). The Second Circuit found no federal jurisdiction because Connecticut's claims were "too many steps removed from [the

defendant's] operations on the [s]helf."  83 F.4th at 146-47
(citation omitted).  "Connecticut's claims ... ultimately
concern neither extracting oil and gas *nor* burning them, but
*talking about what happens to the environment when they are*
*burned*.  Thus, under any standard we might apply, it is plain
that Connecticut's suit does not arise in connection with Exxon
Mobil's operations extracting oil and gas on the outer
continental shelf and cannot trigger federal jurisdiction under
OCSLA."  *Id.* at 147 (cleaned up).  That same reasoning applies
here, and OCSLA does not provide a basis for remand.

## VII. Federal Enclave Jurisdiction

While the issue was not pursued on appeal in *Connecticut*,
Defendants argue here for federal jurisdiction on the basis of
federal enclaves.  Section 8, Article I, clause 17 of the United
States Constitution authorizes Congress "[t]o exercise exclusive
Legislation in all Cases whatsoever ... over all Places
purchased by the Consent of the Legislature of the State in
which the Same shall be, for the Erection of Forts, Magazines,
Arsenals, dock-yards, and other needful Buildings."  U.S. Const.
art. I, § 8.  Defendants contend that jurisdiction under the
Enclave Clause is appropriate because the Complaint alleges
statewide harm, which necessarily includes such "enclaves" as
the Green Mountain National Forest, Marsh-Billings-Rockefeller
National Park, and ports of entry on the Canadian Border.  ECF

24

No. 51 at 52.  Paragraph 6 of the Complaint, however, expressly
states that it is not seeking to establish liability "in
connection with any marketing or sales of [Defendants'] fossil
fuel products that may have occurred on federal lands."  Such
disclaimers have been held sufficient to deny federal enclave
jurisdiction.  *See, e.g., Bd. of Cnty. Comm'rs of Boulder Cnty.
v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 974 (D.
Colo. 2019) ("Federal enclave jurisdiction thus does not exist
here because Plaintiffs' claims and injuries are alleged to have
arisen exclusively on non-federal land."); *Washington v.
Monsanto Co.*, 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017)
(because plaintiff "assert[ed] that it does not seek damages for
contamination to waters and land within federal territory,...
none of its claims arise on federal enclaves").

Furthermore, "[t]he doctrine of federal enclave
jurisdiction generally requires that all pertinent events take
place on a federal enclave."  *Bd. of Cnty. Comm'rs of Boulder
Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271-72
(10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *see also
Mayor & City Council of Balt. v. BP, P.L.C.* 388 F. Supp. 3d 538,
565 (D. Md. 2019) ("[C]ourts have only found that claims arise
on federal enclaves, and thus fall within federal question
jurisdiction, when all or most of the pertinent events occurred
there.").  Accordingly, even with the Complaint's disclaimer,

25

Defendants' argument for jurisdiction based upon a few isolated federal enclaves within Vermont is insufficient.

Finally, as the district court observed in *Connecticut*,

> given that national parks, federal prisons, and military installations are located throughout the country, [Defendants'] interpretation of federal enclave jurisdiction would appear to give rise to federal jurisdiction in any case involving injuries that occur throughout a state, no matter how minor the injuries occurring on federal enclaves are in relation to the claims at issue. ExxonMobil cites no authority in support of what would amount to a sweeping change to the balance between the jurisdiction of state and federal courts.

*Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555 (JCH), 2021 WL 2389739, at *13 (D. Conn. June 2, 2021). This Court agrees, and concludes that Defendants may not remove the case on the basis of federal enclaves.

## VIII. Diversity Jurisdiction

Defendants further argue that, even if there is no federal subject matter jurisdiction, the Court may nonetheless exercise jurisdiction by virtue of diversity of citizenship. The Second Circuit's *Connecticut* decision did not address the question of diversity jurisdiction.

It is undisputed that no Defendant is a citizen of Vermont. It is also undisputed that the State is not considered a citizen for the purpose of diversity jurisdiction. *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). Therefore, there can only be diversity of citizenship if the State is not a real party in

interest.  The Court notes that "[t]he presumption against
federal jurisdiction is especially strong in cases of this sort,
involving States seeking to vindicate quasi-sovereign interests
in enforcing state laws and protecting their own citizens from
deceptive trade practices and the like."  *In re Standard &
Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y.
2014).

Defendants argue that the State is not a real party in
interest because it is a not pursing a "quasi-sovereign
interest."  *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208,
218 (2d Cir. 2013) (explaining that courts must disregard
"nominal or formal parties" and rest jurisdiction only upon the
citizenship of "real parties").  In the *Connecticut* litigation,
the district court concluded that the State of Connecticut was a
real party in interest because it was seeking "redress not
simply for the deception allegedly caused by each of
ExxonMobil's statements but rather for a decades-long campaign
of alleged disinformation that resulted in 'the stifling of an
open marketplace for renewable energy.'"  2021 WL 2389739, at
*14 (citing the State of Connecticut's complaint).  Here, too,
the State is seeking redress for acts or practices that
"influence[d] economic decision-making and interfere[d] with a
fair and honest marketplace."  Complaint at 67, ¶ 190.  A
request for that sort of statewide remedy, including

27

disgorgement, renders the State itself a real party in interest.
*See, e.g., Hood ex rel. Miss. v. MicrosoftCorp.*, 428 F. Supp. 2d
537, 546 (S.D. Miss. 2005) (holding that Mississippi was a real
party in interest because it sought injunctive relief that was
"aimed at securing an honest marketplace"); *Wisconsin v. Abbott
Labs.*, 341 F. Supp. 2d 1057, 1063 (W.D. Wisc. 2004) (holding
that Wisconsin was a real party in interest because it sought
injunctive relief that was "aimed at securing an honest
marketplace, promoting proper business practices, protecting
Wisconsin consumers and advancing plaintiff's interest in the
economic well-being of its residents"); *New York by James v.
Amazon.com, Inc.*, 550 F. Supp. 3d 122, 130 (S.D.N.Y. 2021)
("When the Attorney General seeks disgorgement of profits, the
beneficiary is the State treasury.").

Defendants also assert that the State cannot show injury to
a substantial segment of its population, and is instead
advocating on behalf of an "unknown" number of citizens who
would have changed their purchasing behavior had they known the
true harm of fossil fuels.  ECF No. 51 at 57.  That argument
runs against the well-established principle that "[t]he private
consumers in each state ... constitute a substantial portion of
the state's population."  *Commonwealth of Pennsylvania v. W.
Va.*, 262 U.S. 553, 591-92 (1923) (holding that the state had "an
interest apart from that of the individuals affected" in

28

ensuring the continued flow of natural gas to its citizens); *see also Dist. of Columbia v. Exxon Mobil Corp.,* 640 F. Supp. 3d 95, 111 (D.D.C. 2022), *aff'd*, 89 F.4th 144 (D.C. Cir. 2023) ("There is also little doubt that the District's alleged injuries affect both the District itself and a sufficiently substantial segment of its population.") (citation and internal quotation marks omitted).  The Court therefore finds that diversity jurisdiction is lacking, and that remand is not warranted on that basis.

## IX.  Costs and Fees

The State seeks costs and attorneys' fees pursuant to section 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  The Supreme Court has instructed that, "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."  *Id.*

The Court finds that Defendants did not lack an objectively reasonable basis for seeking removal, and that this case presents no unusual circumstances.  Prior to the *Connecticut*

decision, removal raised several novel questions within the Second Circuit.  *See Connecticut*, 2021 WL 2389739, at *15 (district court finding that Exxon Mobil "did not lack an objectively reasonable basis for removal" because several of the issues presented "are novel within the Second Circuit").  Other courts have noted that cases such as this encompass evolving areas of law and present pleadings that are reasonably subject to varying interpretations.  *See, e.g., Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 3711072, at *5 (noting "rapidly evolving areas of law"); *Delaware v. BP Am. Inc.*, No 20-1429-LPS, 2022 WL 58484, at *15 (D. Del. Jan. 5, 2022) (finding that complaint was "fairly susceptible to different interpretations").  The State's request for fees and costs is therefore denied.

## Conclusion

For the reasons set forth above, the Court grants the State's motion to remand (ECF No. 36) and denies the State's request for fees and costs.  This case is remanded to the Vermont Superior Court.

DATED at Burlington, in the District of Vermont, this 6th day of February, 2024.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge